*Hartford,*
June, 1816.

## HUNTINGTON *against* EDWARDS.

The original purchasers of the Western Reserve, associated under the name of the *Connecticut Land Company,* preferred a memorial to the General Assembly, stating that they had sustained many inconveniences and embarrassments from the want of civil government in the Western Reserve, and from other causes, and praying for the remission of two years interest on their bonds to the state; which was granted on certain conditions, with a *proviso,* that the interest thus remitted to the obligors should, where a transfer had been made, enure to the benefit of the assign, in case he could make out a just claim

THIS was an action of *assumpsit.* The declaration stated the following case. In *May* 1795, *John Treadwell,* Esq. and others, were appointed, by the General Assembly of this state, a committee, with authority to sell and convey, for and in behalf of the state, the lands claimed by the state lying west of the state of *Pennsylvania,* commonly called the Western Reserve. On the 2d of *September* following, this committee gave and executed deeds of such lands to sundry persons respectively, and in divers proportions, to hold, as tenants in common, to them and their respective heirs. Of these grantees the defendant was one, and received a deed of 60,000 twelve hundred thousandths of the Western Reserve, to hold to him, and his heirs, as tenants in common with the other purchasers; in consideration whereof, the defendant, at the same time, executed and delivered his bond to the treasurer of the state, to and for the use and benefit of the state, for the payment of the sum of 60,000 dollars, with interest. On the 5th of *September,* 1795, the defendant and the other purchasers voluntarily associated together, and formed themselves into a company, by the name of *The Connecticut Land Company.* For the more convenient and beneficial management of their common interest, they formed a constitution, in which they provided that there should be a board of trustees, and a board of directors, for the company. *John Caldwell, John Morgan* and *Jonathan Brace,* Esqrs. were, by deed, appointed trustees; and the lands were conveyed, by the purchasers, to them, and the survivors and survivor of them, to hold in trust to and for the sole use and benefit of the company, and each proprietor therein, according to his right and proportion. The legal title thereby became vested in the trustees; and all the beneficial interest of the purchasers remained in them respectively. This beneficial interest was commonly called " *trust and benefit;*" and in all the sales and alienations afterwards made, by the defendant and the other purchasers,

thereto in law or equity. It was held, that the assign of one of the original purchasers could not recover the amount of his proportion of the interest remitted, in *assumpsit* against his grantor, without shewing that he purchased and held the land under such circumstances that he participated in the inconveniences and embarrassments for which the remission of interest was allowed.

the right to themselves respectively belonging, and to be conveyed, was specified and described as *" trust and benefit."*

On the 13th of *July* 1797, the defendant applied to the plaintiff, and requested him to purchase of the defendant, a part of his interest in the Western Reserve, equal to 4,000 twelve hundred thousandths of the whole, to which the plaintiff agreed ; and the defendant, in consideration of 9,000 dollars, received by him of the plaintiff, conveyed to the plaintiff, 4,000 twelve hundred thousandths of the *" trust and benefit"* of the Western Reserve, to hold to the plaintiff, his heirs and assigns ; whereby the plaintiff, as assignee of the defendant, became vested with four sixtieths of all the defendant's right and title, and continues to be the owner thereof. And the plaintiff, by virtue of such conveyance, became, and has ever since remained, a member of the company.

In *October* 1800, the trustees and directors of the company preferred their petition, in behalf of the company, to the General Assembly, shewing that the company had sustained many inconveniences and embarrassments from the want of civil government in the Western Reserve, and from other causes ; and praying that two years' interest on the bonds given to the trustees of the state for the purchase money, should be remitted to the several obligors, or, where transfers had been made, to their assigns equitably entitled thereto, and that the payment of the principal of the bonds might be postponed. The General Assembly resolved, that on condition the respective obligors, on or before the 1st of *May* then next, should give, or should have given, good and sufficient security in lands or other property, to the satisfaction of the managers of the school fund, or such other persons as should be appointed to take care of the same, and should have paid and satisfied to the treasurer of the state, by the 1st of *March* then next, the one half of the year's interest which would fall due on the 2d of *September* then next following, and the other half thereof, when due ; then the two years' interest which became due on the 2d of *September* next preceding, or the amount thereof, where the whole or part thereof had been paid, should be remitted, and discounted from, or indorsed on said bonds repectively, or deducted from the interest which should thereafter accrue, where the

*Hartford,*
June, 1816.

Huntington
*v.*
Edwards.

whole or part of said two years' interest had been paid ; so that the obligors of the respective bonds might have equal benefit. To this resolve the following *proviso* was annexed : " Provided also, that it is the intent and design hereof, that the interest hereby remitted to the said obligors, shall, where a transfer has been made, enure to the benefit of the assign, in case he can make out a just claim thereto in any court of law or equity."

At the time of passing this resolve, the defendant stood bound in his bond of 60,000 dollars aforesaid, and, within the time limited by the resolve, as well for the benefit of the plaintiff as of himself, complied with said terms and conditions ; and thereupon, pursuant to the provisions of the resolve, the committee of the school fund, being thereunto fully authorized, on the 27th of *April,* 1801, discounted and allowed to the defendant on his bond, two years' interest, *viz.* the sum of 7,200 dollars ; which discount and allowance was made by the committee, and obtained by the defendant, as well for the use, benefit and advantage of the plaintiff, as of the defendant himself, in the proportions in which they were respectively interested in the Western Reserve.

The declaration also averred, that all the embarrassments and inconveniences sustained by the company, which were the consideration of the grant made by the General Assembly, were sustained and suffered during the time the plaintiff, by virtue of his purchase, was a member of the company ; and were sustained and suffered by him in his full proportion.

The defendant pleaded *non-assumpsit,* on which issue was joined to the court. On the trial, the plaintiff proved the formation and constitution of the *Connecticut Land Company ;* their petition to the General Assembly, and the resolve passed thereon ; the allowance under that resolve of two years' interest to the defendant ; and the transfer from the defendant to the plaintiff ; all as stated in the declaration. The consideration paid by the plaintiff was agreed to be 4,679 dollars, 44 cents. There was no evidence that the plaintiff participated in the embarrassments and inconveniences sustained by the company, except what resulted, by implication, from the evidence specified. The defendant, on his part, read a deposition, the contents of which it is unnecessary to

state. By consent of parties, the case was reserved, with the evidence on both sides, for the consideration and advice of the nine Judges.

*Sherman* for the plaintiff.

*Daggett* and *N. Smith* for the defendant.

SWIFT, Ch. J. The plaintiff, as " assign" of the defendant, is within the proviso of the act of Assembly, and would be entitled to recover, if he could make out an equitable claim to the two years' interest that was remitted, or any part of it.

It appears, that the defendant conveyed the land in question, with a warranty of title. There was no conveyance of juridical right ; there was no fraud, or misrepresentation by the defendant ; and the plaintiff had full knowledge of the state and condition of the land. The sale was made after the embarassments respecting the title were well known. To entitle the plaintiff to recover, by making out an equitable claim, he must prove, that he purchased the land and gave for it a full price, admitting no embarrassment or inconvenience existed with respect to the title or juridical right, and that he has sustained the injury arising therefrom. Yet there is no such averment in the declaration, and it does not appear from the proof but that, at the time of the purchase, the parties contemplated all the inconveniencies and embarrassments respecting the land for which the remission of interest was allowed, and that the plaintiff gave no more than what would have been a fair price on a calculation of the injury that might arise from the inconveniencies and embarrassments ; so that the defendant, by the depression of the value of the land, sustained this injury, instead of the plaintiff. Admitting, then, that the inconveniences and embarrassments continued after the purchase of the land ; yet if they were taken into consideration in the price of it, the plaintiff cannot be entitled to the allowance. As it does not appear but that this was the case, I am of opinion, that this action cannot be sustained.

In this opinion, TRUMBULL, EDMOND, SMITH, BRAINARD, and BALDWIN, Js. concurred.

*Hartford,*
June, 1816.

Huntington
*v.*
Edwards.

*Hartford,*
June, 1816.

Huntington
*v.*
Edwards.

HOSMER, J. If the Court were empowered to adjudge this case, on the principles of natural justice merely, I should unhesitatingly concur with the Chief Judge, for the reasons he has assigned. But I am of opinion, that the jurisdiction of the Court is more limited. The result will be precisely the same. Notwithstanding this, I consider it expedient to express my views of the subject before the Court.

The General Assembly, by their resolve, have, on certain conditions, remitted to the obligors, two years' interest on their bonds executed for the Western Reserve. They have subjoined a proviso, " That the interest remitted to the obligors, where a transfer has been made, enure to the benefit of the assign, in case he can make out *a just claim thereto, in any court of law or equity.*" How is this claim to be established ? In the same manner, and on *the same foundation,* that all other demands are to be made out before the abovementioned courts ; that is, *by the acknowledged principles of law or chancery.* It was for this reason, in my opinion, that the legislature omitted to specify some rule or principle, as a directory to the parties interested. By referring the claims of assigns to courts, *guided by established principles,* they made all the provision which was necessary. The tribunals appointed to take cognizance of the controverted demands, were not vested with unlimited discretion. They were governed by principles well established, to the operation of which the legislature subjected every claim. Had the proviso referred the assigns to courts of law only, it would be the natural construction, that none but principles of law were to govern. If the reference had been to the chancery tribunals, the principles peculiar to those courts must have been the rule of decision. But as both courts are embraced, the extent of the relief intended appears to have been, all that law or equity, *on the rules which govern in these courts,* could possibly give. This construction I prefer, because it naturally expresses the full meaning of the proviso, and imparts settled rules and principles of decision, without confiding to the court that boundless discretion, which, except in cases of absolute necessity, ought never to be given.

To this construction of the resolve has been opposed the supposition, that it would render the proviso of no effect. The objection assumes the principle, that nothing can be

efficacious, which is not of strict necessity. This is clearly unfounded, and not conformable to common experience. By imparting correct rules of decision *explicitly*, there was sufficient of utility to render the proviso desirable ; and on this ground, the legislature frequently qualify their acts in a similar manner.

It is not pretended, that there are any established principles of law or equity, which sanction the plaintiff's demand.

GOULD, J. I assent to the opinion, that the plaintiff cannot recover ; but wish to be understood, as concurring in that opinion, upon the sole ground that he has not satisfactorily made out his case in evidence. As the views, which I entertain of the legal questions, arising out of the case, cannot influence the decision ; it is unnecessary for me to explain them. I would just observe, however, that if the plaintiff had supported his declaration, by sufficient proof of his having participated in the embarrassments, expenses and losses, specified in the memorial of the land-company to the General Assembly ; I should consider him as within the *proviso* of the resolve of *October* 1800 ; and, upon the equitable principles, which govern this action, entitled to a recovery.

GODDARD, J. gave no opinion.

Judgment to be given for the defendant.